# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| RANDALL THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>1:15-CV-00136-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Randall Thompson filed this action asking the Court[1] to reverse and remand the Social Security Administration's final agency decision denying his Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act, *see* 42 U.S.C. §§ 401–434, 1381–1383f. The Administrative Law Judge ("ALJ") determined that Mr. Thompson did not qualify as disabled within the meaning of the Social Security Act. (Administrative R. ("R.") 521, ECF No. 8.) Having carefully considered the parties' memoranda, the complete record in this matter, and the oral argument, the Court REVERSES and REMANDS the Commissioner's decision.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Thompson filed applications for DIB and SSI alleging a disability onset date of July 1, 2007. (R. 174.) The Social Security Administration denied his applications initially on June

---

[1] In accordance with 28 U.S.C. §§ 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned United States Magistrate Judge. (ECF No. 14.)

25, 2008 and again upon reconsideration on October 7, 2008.  (R. 28.)  Following a hearing, an

ALJ agreed, denying disability benefits in a decision issued February 16, 2010.  (R. 28, 39.)  Mr.

Thompson sought review in United States District Court for the District of Utah.  (R. 591.)  The

district court remanded the case to the Commissioner in an order dated March 3, 2014.  (R. 600.)

On January 2, 2015, in a decision issued on remand, the ALJ again found Mr. Thompson not

disabled.  (R. 521.)

Mr. Thompson alleges disability due to his physical and mental impairments.  (R. 205.)

Mr. Thompson complains of lower back and neck problems, anxiety, depression,

migraines/headaches, carpal tunnel syndrome, and right shoulder impairment.  (*See* R. 526-27.)

Mr. Thompson completed his GED and three years of technical school for welding, operating a

forklift, and carpentry; he had past relevant work as a welder, order clerk, and sweeper/cleaner.

(R. 57-58, 211, 579-80.)

In the first decision, the ALJ found Mr. Thompson suffered from severe impairments of

status post cervical fusion, status post lumbar fusion, depression, anxiety, headaches, and right

shoulder impairment.  (R. 30.)  The ALJ found Mr. Thompson did not meet a listing.  (R. 31.)

The ALJ found Mr. Thompson could not perform any past relevant work.  (R. 38.)  However, the

ALJ found a significant number of jobs existed in the national economy that Mr. Thompson

could perform.  (*Id.*).  Therefore, the ALJ determined Mr. Thompson did not qualify as disabled.

(R. 39.)

The Utah District Court reversed and remanded due to the ALJ's failure to evaluate

medical opinions properly and the ALJ's failure to assess Mr. Thompson's established

limitations in the RFC assessment.  (R. 591-600.)

At the second hearing, the ALJ found that Mr. Thompson had the severe impairments of degenerative disc disease of the cervical spine, status post fusion; degenerative disc disease of the lumbar spine, status post fusion; carpal tunnel syndrome; and right shoulder impingement. (R. 526.)  The ALJ found Mr. Thompson did not meet a listing.  (R. 528.)  The ALJ found Mr. Thompson can perform sedentary work.  (R. 529.)  The ALJ found Mr. Thompson capable of performing his past relevant work as an order clerk.  (R. 535.)  Therefore, the ALJ found Mr. Thompson not disabled.  (*Id.*)

## STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA").  The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[2]  The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but

---

[2] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

3

mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted). The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007). The court does not have to accept the Commissioner's findings mechanically but must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994);

*Thompson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## FIVE-STEP DISABILITY DETERMINATION

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five,

the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

## ANALYSIS

In this case, the ALJ applied four steps of the five-step sequential disability evaluation. In short, the ALJ found Mr. Thompson has not engaged in substantially gainful activity since his alleged onset date and has several severe impairments. (R. 526.) Despite those impairments, the ALJ found Mr. Thompson could still perform sedentary work, including his past work as an order clerk, and therefore does not qualify for DIB or SSI. (R. 529, 535.)

Mr. Thompson argues the ALJ: (1) erred by failing to evaluate the medical opinions in the record properly, and (2) erred by failing to evaluate Mr. Thompson's credibility properly. (Pl.'s Opening Br. 9, ECF No. 17.)

## I. Evaluation of Physicians' Opinion Evidence

Mr. Thompson argues the ALJ failed to evaluate any of the opinions that dealt specifically with Mr. Thompson's non-severe mental impairments. (Pl.'s Opening Br. 11-13, ECF No. 17.)

An ALJ must evaluate every medical opinion. 20 C.F.R. §§ 404.1527(c). If the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record," the ALJ must give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2). The ALJ did not give controlling weight to Mr. Thompson's treating physicians—Dr. Merrell, Dr. Svagr, Dr. Bos—and his physician's assistant Mr. Garfield. (R. 533-34.)

When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider certain factors in evaluating all medical source opinions. These factors

include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

To reject a medical opinion, the ALJ must provide "'specific, legitimate reasons.'" *Drapeau*, 255 F.3d at 1213 (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)). The ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review). When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence).

The ALJ failed to evaluate mental limitation evidence from Dr. Duncan and Dr. Walker in the decision on remand. (*See* R. 533-35.) Dr. Duncan's opinions and notes aided the ALJ in determining Mr. Thompson suffered from mental impairments in the first decision. (R. 34.) Dr. Duncan evaluated Mr. Thompson and diagnosed Mr. Thompson with major depressive disorder and panic disorder. (R. 365.) Dr. Walker diagnosed Mr. Thompson with depression/anxiety. (R. 283.) In this decision, the ALJ found that Mr. Thompson's mental impairments non-severe. (R. 527-528.) Nevertheless, in determining the claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including those considered not "severe." *See* 20 C.F.R. §§ 404.1545(a)(2).

The ALJ does not analyze Mr. Thompson's non-severe mental impairments at step four and does not mention any affect such impairments might have on the RFC or explain why they have no effect. (*See* R. 529-35.) The ALJ mentions Mr. Thompson cannot operate heavy machinery, suggesting implicitly that Mr. Thompson's medicines do cause mental impacts. (R. 529.) However, the ALJ fails to explain why he came to that conclusion or what impacts Mr. Thompson's other mental, non-severe impairments might have on his RFC. (*Id.*)

"While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to impairments–be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996). The Tenth Circuit has explicitly addressed whether an ALJ's step two analysis of a non-severe mental impairment could substitute for a step four analysis regarding that impairment. *Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). The court stated, "most importantly, the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." *Id.* at 1065 (quoting, SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). In *Wells,*

> after stating his conclusion that Ms. Wells' mental impairments were non-severe, the ALJ stated that "[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below." He then reiterated his conclusion that the mental impairments were non-severe. The language used suggests that the ALJ may have relied on his step-two findings to conclude that Ms. Wells had no limitation based on her mental impairments. If so, this was inadequate under the regulations and the Commissioner's procedures.

*Wells,* 727 F.3d at 1069 (citation omitted).

In the instant case, the ALJ never mentions the mental impairments again after finding them non-severe. (*See* R. 529-35.) In the first decision, the ALJ found Mr. Thompson could

only perform non-skilled work because of "[m]ild limitations on his ability to concentrate, perform duties within a schedule, sustain routine without supervision, interact with the general public, and deal with stress." (R. 32, 81.) While the prior decision does not bind the ALJ, it demonstrates that an ALJ could find mental limitations that would prevent Mr. Thompson from performing his prior relevant work as an order clerk—a semi-skilled job. At that point, the ALJ would have to proceed to step five in the analysis, which he did do in the decision. Counsel for the Commissioner and counsel for Mr. Thompson agree that the ALJ's finding regarding a final assembler in the first decision cannot provide a basis to find harmless error because the physical restrictions in the two decisions differ. The combination of a failure to even mention Dr. Duncan along with the lack of any analysis of mental impairments in the RFC consideration convinces the Court the ALJ committed reversible error.

### III. Evaluation of Mr. Thompson's Reports of Pain

Mr. Thompson next argues the ALJ did not evaluate his credibility properly. (Pl.'s Opening Br. 9, ECF No. 17.) The Court agrees.

When evaluating credibility, the ALJ must follow the prescribed two-step process: (1) evaluate whether the claimant has an underlying medically determinable impairment one could reasonable expect to produce the claimant's pain or other symptoms; and (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir. 2000) (discussing factors to evaluate credibility). "'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as

to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).  If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions.  *Id.*  To make this analysis, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted).  But this analysis "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found one could reasonably expect Mr. Thompson's medically determinable impairments to cause the alleged symptoms; however, the ALJ found Mr. Thompson's statements about the intensity, persistence, and limiting effects of his symptoms lacked credibility.  (R. 530.)  The ALJ discounted Mr. Thompson's credibility regarding the pain he experienced due in part to drug seeking behavior.  (R. 532).  The ALJ did so because he, as the Commissioner concedes, incorrectly believed Mr. Thompson violated a medication contract with Dr. Walker.  (R. 532, 738.)  The ALJ also attributed secondary gain seeking behavior to Mr. Thompson because of this mistaken belief.  (R. 532.)  Such a view would necessarily cause the ALJ to discount Mr. Thompson's pain – a central issue in this disability determination.  Thus

while the ALJ gave other reasons for discrediting Mr. Thompson, the Court cannot separate out the impact this error had on the ALJ's pain assessment.

For the reasons set forth above, the Court finds substantial evidence does not support the ALJ's evaluation of Mr. Thompson's pain. On remand the ALJ should reevaluate Mr. Thompson's pain. Additionally, Mr. Thompson points to a number of other incomplete "facts" cited by the ALJ to discredit him. (Pl.'s Opening Br. 13-17, ECF No. 17.) As the ALJ will need to reconsider his opinion on remand, he should consider these points as well.

## CONCLUSION

For the reasons set forth above, the Court **REVERSES** and **REMANDS** this matter to the Commissioner for further proceedings.


DATED this 1st of July, 2016.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge